

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRIDGET McLAUGHLIN individually )
and on behalf of her minor son )
STEPHEN McLAUGHLIN, )
)
Plaintiff, )
)
v. ) No. 04 C 7156
)
)
CITY OF CHICAGO, DETECTIVE )
MILTON OWENS, DETECTIVE )
D. GILBERT, SERGEANT DENNIS )
P. WALSH, WATCH COMMANDER )
WALTER GREEN, LT. JANET )
ROCHE, and COMMANDER JAMES )
JACKSON, )
)
Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' partial motion to dismiss. For the reasons stated below, we grant in part and deny in part the partial motion to dismiss.

## BACKGROUND

Plaintiff Bridget McLaughlin ("McLaughlin") alleges in her amended

1

complaint that on August 5, 2003, a 14 year old boy shot and killed his father in Chicago, Illinois. McLaughlin alleges that at that time she was a police officer for the Chicago Police Department and that her family was close friends with the members of the family involved in the August 5, 2003, shooting. According to McLaughlin, on the day of the shooting, police officers came to her house and asked to speak to her son Stephen ("Stephen"), who was friends with the alleged shooter. McLaughlin alleges that later that evening at approximately 8:30 p.m. she voluntarily took Stephen to the police station to give a statement. McLaughlin claims that as the witness interview progressed the police officers began to accuse her son of being involved in the shooting. McLaughlin claims that she told the officers that she wanted to leave with her son, but that the officers refused to let her go. McLaughlin also contends that during the questioning she asked to speak to a Sergeant Green ("Green"), and told him that she wanted to leave the police station. Plaintiffs claim that Green first gave her a direct order not to leave the station, apparently in his capacity as McLaughlin's supervisor. However, according to Plaintiffs after McLaughlin explained that she and her son were tired and had gone through a personal crisis, Green made a gesture towards the door and Plaintiffs understood that the gesture meant that they could leave. Plaintiffs allege that when they attempted to leave the police station, Defendant Detective Milton Owens ("Owens") stepped in between McLaughlin and her son and told McLaughlin that she would have to leave her son at the station. McLaughlin alleges that when

reached for her son's arm she was placed under arrest. McLaughlin claims that as she was arrested an officer stated that he was glad she was under arrest because the officers would be able to interrogate her son outside of her presence.

McLaughlin claims that after the arrest she was relieved of her police powers, ordered to undergo psychological and physical testing, and was reassigned to another division. McLaughlin alleges that the police officers involved in her arrest falsified police reports and fabricated evidence to support the prosecution of the charges against McLaughlin. According to McLaughlin, the charges against her were dismissed. In McLaughlin's amended complaint, she includes a claim alleging a denial of her Fourth Amendment rights in violation of 42 U.S.C. § 1983 ("Section 1983") (Count I), a Section 1983 claim alleging a denial of her First Amendment rights (Count II), a Section 1983 claim based upon a failure by other officers to intervene (Count III), a malicious prosecution claim (Count IV), a false imprisonment claim (Count V), and an intentional infliction of emotional distress ("IIED") claim (Count VI). McLaughlin also asserts the applicability of respondeat superior (Count VII) and indemnification (Count VIII) in her complaint.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the

3

plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief."). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 445-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that a "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later."). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with

at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

### I. Fourth Amendment Unlawful Detention Claims (Count I)

Defendants move to dismiss the Section 1983 claim that is based upon an alleged denial of Plaintiffs' Fourth Amendment rights (Count I). Plaintiffs allege that they were both unlawfully detained without probable cause in violation of the Fourth and Fourteenth Amendments. (A Compl. Par. 32). Defendants only seek a dismissal of the unlawful detention claim brought by Stephen and Defendants indicate that they will not seek the disposition of the unlawful detention claim brought by McLaughlin until the summary judgment stage.

Plaintiffs contend that Stephen was unlawfully detained in violation of the Fourth Amendment. Plaintiffs acknowledge in the complaint that they went to the police station voluntarily. (A Compl. Par. 9). Plaintiffs acknowledge that they were not under arrest until Owens allegedly "insert[ed] himself between" the two Plaintiffs, stood in the doorway and stretched out his arms. (A Compl. Par. 23).

5

Whether or not Owens' conduct constituted a detention and whether or not it violated the Fourth Amendment requires a factual inquiry beyond that which is permitted when ruling on a motion to dismiss. Defendants' arguments are thus premature. For the purposes of ruling on a motion to dismiss, such conduct alleged by Plaintiffs could constitute a violation of Stephen's Fourth Amendment rights. *See Conley*, 355 U.S. at 45-46 (stating that a court may not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

Defendants also argue that they had reason to detain Stephen because of the information that they learned from Stephen about his contact with the alleged shooter. (A. Compl. Par. 12). However, such information referred to by Defendants is beyond the scope of the complaint. The complaint states merely that the police asked Stephen about previous contact with the alleged shooter. Defendants' arguments which refer to evidence supporting their contention that Defendants had probable cause to detain Stephen, and the information that Defendants learned from Stephen during his questioning cannot be considered for the purposes of their motion to dismiss.

The Seventh Circuit has indicated that "[p]re-trial detention of a juvenile does not violate the due process clause provided that: 1) the state does not subject a juvenile to restrictions and conditions of confinement amounting to punishment and 2) the period of detention is not excessive in relation to the state's interest in

6

protecting both the community and the juvenile from the consequences of future criminal conduct." *Bergren v. City of Milwaukee*, 811 F.2d 1139, 1143 (7th Cir. 1987). In the instant action, an evaluation of the above analysis would require a factual inquiry beyond the inquiry that is permitted when ruling on a motion to dismiss. Plaintiffs allege that Stephen was questioned. Plaintiffs claim that they eventually decided to leave the police station because they did not like the tone of the questions and they were tired. Plaintiffs allege that they were prevented from leaving the police station without sufficient justification by Defendants. Whether or not the confinement of Stephen constituted a punishment and whether or not the period of his detention was excessive requires a factual inquiry far beyond the complaint. Therefore, Defendants' arguments in this regard are premature and we deny Defendants' motion to dismiss the Fourth Amendment unlawful detention claim brought by Stephen (Count I).

II. First Amendment Claim (Count II)

Defendants argue that the court should dismiss the First Amendment claim because Plaintiffs allege that the context of McLaughlin's speech involved her personal concerns rather than public concerns. Defendants argue that the court should employ the *Connick-Pickering* test to address the First Amendment claim. Under the *Connick-Pickering* test a plaintiff bringing a "First Amendment retaliation claim in the employment context" must establish that : 1) "the plaintiffs must prove

7

that their speech was a matter of public concern," and 2) the "speech played at least a substantial part in the employer's decision to take an adverse employment action against" her. *Gustafson v. Jones*, 290 F.3d 895, 906-07 (7th Cir. 2002). If the plaintiff establishes the above two elements, "the defendants can only prevail if they prove by a preponderance of the evidence that the government's interest, as an employer, in efficiently providing government services outweighs the employees' First Amendment interests, or if they can prove that they would have disciplined the employees even in the absence of the speech." *Id.*

In the instant action, Defendants argue that McLaughlin's speech was not protected. However, Defendants' arguments reach beyond the complaint which is improper for a motion to dismiss. A matter of public concern can be any matter that relates to "a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee." *Id.* The mere fact that McLaughlin's speech involved a matter of personal interest does not automatically preclude the possibility that the speech may also involve a matter of public concern. McLaughlin was protesting the fact that a minor might be interrogated outside the presence of his mother and without a lawyer present. We cannot find, at this juncture, that McLaughlin's speech was not of public concern. The Seventh Circuit has specifically stated that "[w]hether a government employee's speech addresses a matter of public concern depends upon 'the content, form, and context of [the speech] as revealed by the whole record.'" *Id.* Thus, Defendants'

arguments in regards to the First Amendment claim based on the general statements in the complaint are premature since the court has not been provided with a complete record of the facts and the specific content and context of the speech made by McLaughlin. In fact Defendants' own cases that are quoted in support of their arguments illustrate that Defendants' arguments are premature. Defendants quote *Sullivan v. Ramirez*, 360 F.3d 692 (7th Cir. 2004) in support of Defendants' assertion that the court should apply the *Connick-Pickering* test. However, in *Sullivan* the Court was not reviewing a district court's ruling at the pleadings stage. Rather, the Court in *Sullivan* was reviewing a district court's ruling on a summary judgment motion. *Id.* at 693. Defendants also cite in support of their arguments *Smith v. Fruin*, 28 F.3d 646 (7th Cir. 1994) in which the Court was reviewing a district court's ruling on a summary judgment motion. *Id.* at 647. Therefore, we deny Defendants' motion to dismiss the First Amendment claim (Count I).

III. Failure to Intervene (Count III)

Defendants seek a dismissal of the failure to intervene claim (Count III). Plaintiffs allege that one or more of Defendants witnessed the questioning of Stephen and the arrest of McLaughlin and failed to intervene to prevent the "unjustified and excessive use of force." (A Compl. Par. 45). In the instant action, according to the amended complaint, McLaughlin was arrested, handcuffed and placed in an interrogation room. The amended complaint contains no allegations

9

that indicate that there was any excessive use of force upon McLaughlin. Thus, in this regard, the amended complaint fails to provide the operative facts to give Defendants notice of the failure to intervene claim brought against them. In addition, McLaughlin merely states vaguely that "one or more of the Defendants stood by and watched without intervening to prevent the unconstitutional and illegal conduct to which Plaintiffs were subjected." (A. Compl. Par. 45). Such an allegation fails to provide notice of what conduct was viewed by which Defendants. Therefore, we grant Defendants' motion to dismiss the failure to intervene claim (Count III).

## IV. Malicious Prosecution Claim (Count IV)

Defendants move to dismiss the malicious prosecution claim (Count IV). In order to establish a malicious prosecution claim, the plaintiff must allege facts showing: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (1996). A malicious prosecution claim cannot be based upon "underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Id.*

Defendants argue that, since the criminal case against McLaughlin was

10

stricken from the record with leave to reinstate, McLaughlin cannot show that the termination of her case indicates that she was innocent. However, Defendants' arguments are once again premature. In *Ferguson v. City of Chicago*, 820 N.E.2d 455 (Ill. 2004) the Supreme Court of Illinois explained its prior holding in *Swick* stating that in *Swick* the Court "held that the bare fact that a case has been nol-prossed is not sufficient to establish that the case was terminated favorably for the plaintiff" and that "the plaintiff must show that the prosecutor abandoned the case for reasons indicative of the plaintiff's innocence." *Id.* at 460. Whether or not McLaughlin will be able to point to any evidence other than the bare language of the termination order in her case and whether McLaughlin can produce evidence to "show" that the prosecutor agreed to terminate her case because of McLaughlin's innocence is a matter than cannot be resolved in a motion to dismiss. *See Conley*, 355 U.S. at 45-46 (stating that a court may not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). Therefore, Defendants' motion to dismiss is premature in this regard and we deny Defendants' motion to dismiss the malicious prosecution claim (Count IV).

## V. False Imprisonment Claims (Count V)

Defendants move for a dismissal of the false imprisonment claim brought by Stephen. Defendants do not move for a dismissal of the false imprisonment claim

brought by McLaughlin. To support the dismissal of the false imprisonment claim, Defendants merely refer the court to their arguments in support of a dismissal of the Fourth Amendment claim (Count I). As indicated above, Defendants' arguments concerning whether or not Stephen was unlawfully detained seek to draw the court into an inquiry that is premature at this juncture. *See Conley*, 355 U.S. at 45-46 (stating that a court may not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). Therefore, we deny Defendants' motion to dismiss the false imprisonment claim brought by Stephen (Count V).

## VI. Intentional Infliction of Emotional Distress Claim (Count VI)

Defendants move to dismiss the IIED claim (Count VI). For an IIED claim under Illinois law, a plaintiff must establish that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress." *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 651 (7th Cir. 2003)(quoting *Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994)). Defendants argue that Plaintiffs have failed to allege conduct which is extreme and outrageous, which is an element of an IIED cause of action. However, as indicated above, under the federal notice pleading standard a plaintiff is not required to allege

facts sufficient to support each element of a cause of action. *See Sanjuan*, 40 F.3d at 251(stating that a "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later."). In addition, regardless, Plaintiffs have pled sufficient facts to meet the extreme and outrageous conduct element at the pleadings stage. Plaintiffs claim that when they attempted to leave the interrogation room Owens stepped in between Plaintiffs and that when McLaughlin reached for her son she was arrested and taken to another room. Plaintiffs also allege that the officers took McLaughlin away from her son and stated that they were glad that she was under arrest because they could interrogate her son outside her presence. Plaintiffs allege that McLaughlin cried out to her son, telling him to leave the building. Plaintiffs further allege that after the incident Defendants falsified police reports and fabricated evidence in order to pursue the criminal claim against McLaughlin. We cannot determine, at this initial pleading stage, the propriety of Defendants' alleged conduct or their motivations behind such conduct. If such conduct was done with hidden animus, it is possible that it could be deemed extreme and outrageous conduct that could support an IIED claim. However, we are not making any such finding at this juncture. We merely conclude that for the purposes of Defendants' motion to dismiss, Plaintiffs have pled allegations sufficient to state an IIED claim. Therefore, we deny Defendants' motion to dismiss the IIED claim (Count VI).

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion to dismiss the Fourth Amendment unlawful detention claim brought by Stephen (Count I). We deny Defendants' motion to dismiss the First Amendment claim (Count II). We grant Defendants' motion to dismiss the failure to intervene claim (Count III). We deny Defendants' motion to dismiss the malicious prosecution claim (Count IV), the false imprisonment claim brought by Stephen (Count V), and the IIED claim (Count VI).

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 5, 2005